THE MILLIRON OIL COMPANY, a Wyoming Corporation,

Plaintiff and Respondent,

vs.

ROBERT CONNAGHAN, et al.,

Defendants,

and HENRY G. HILLBERRY,

Defendant and Appellant.

(No. 2706; October 16th, 1956; 302 Pac. (2d) 256)

For the defendant and appellant the cause was submitted upon the brief and oral argument of Jerry W. Housel of Cody, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of E. George Rudolph of Laramie, Wyoming and Joseph Cavalli of Thermopolis, Wyoming; oral argument by Mr. Cavalli.

332

## OPINION

HARNSBERGER, Justice.

The Milliron Oil Company, plaintiff, brought its action against a large number of defendants among whom was the appellant Hillberry. The object of the suit was to quiet plaintiff's alleged title both to the surface and to the oil, gas and other minerals on and under a considerable acreage, and to quiet its alleged title to oil, gas and other minerals only, on and under certain other acres. Hillberry denied plaintiff's claim of title to the oil, gas and other minerals on and under 120 acres of the lands wherein plaintiff was claiming only the oil, gas and other minerals, asserting he, Hillberry, was the owner thereof, and by a cross-petition

Hillberry also sought to quiet his own title, not only to the oil, gas and other minerals on and under that 120 acres, but also to the surface of those lands. To support its claim of ownership of the mineral interest in the tract, plaintiff relied in part upon a deed from the Mill Iron Cattle Company, a corporation, bearing date September 18, 1916, and also upon a prescriptive title acquired through its constructive adverse possession of the minerals under color of that same deed. Appellant Hillberry contended he acquired title to the minerals by virtue of an agreement and deed from one George Merrill, by purchase of a tax title and through adverse possession of both the surface and the minerals dating from a period of "more than fifteen years last past and prior to the commencement of this action." Judgment was rendered quieting plaintiff's title to the oil, gas and other minerals on and under the 120 acres. It is from that judgment that appellant Hillberry appeals, thus bringing to this court the single question as to which of the parties has the better title to those mineral rights.

It may be noticed that in making reference to the parties and to the names of grantors and grantees in conveyances referred to, there will appear to be some discrepancy. This is because the names as used are identical with such names as they are shown in the particular entry appearing in the abstract of title.

All the evidence in the case was submitted by stipulation and it consisted in part of an abstract of title covering the lands involved, it being agreed however that any statement or representation contained in the abstract indicating a separate assessment or tax on minerals as distinguished from surface rights, was erroneous and did not correctly reflect the records in the office of the county clerk with respect to the lands concerned or the taxes or assessments thereon, and

that such records show in fact that there had never been a separate assessment or tax against the minerals or against the surface of the property. It was also stipulated that all the property had been assessed and taxed to Hillberry since 1939; that Hillberry was in sole, exclusive and unquestioned possession of all of the property from October 1913 to January 1917, and of the surface continuously from January 1917 to the spring of 1927 and continuously from the spring of 1938 to and including the date of the stipulation; that no entry had been made upon the surface for the purpose of working or producing minerals in or under the property at any time since 1913; that oil, gas or other minerals had never been produced from the property, no drilling done, and no wells begun or completed thereon; that Hillberry had attempted to lease the lands for mineral development and in 1946 had in fact executed an oil and gas lease to Continental Oil Company which was later cancelled; that again in 1953 he had executed an oil and gas lease to Carter Oil Company, which lease was also cancelled, after which Hillberry executed a further lease in 1953 to Sacony-Vacuum Oil Company, Inc., and agreed to commit the property to unit agreement. There was also a supplemental stipulation that an affidavit of Hillberry was to be considered as "facts and evidence" in the case. The affidavit states that in October 1913 Hillberry contracted to buy the lands from one George Merrill for $14 an acre; that Merrill turned over to Hillberry possession of the lands at that time; that Hillberry assumed he was buying the minerals along with the land; that either in December 1916 or January 1917, Hillberry paid Merrill the agreed purchase price together with interest thereon and received a deed from Merrill; that Hillberry had used the land until he sold the property to his son in 1927; that (as

is also shown by the abstract) the land in question was sold on July 11, 1932 to Hot Springs County for unpaid 1931 taxes; that Washakie Livestock Company bought the property from the County in 1936 and in 1938 Hillberry obtained a deed for the lands from the Washakie Livestock Company and later leased the lands for oil, gas and mineral development.

The abstract further shows that in 1903 a patent had been granted for forty acres of the tract and that through Mesne conveyances it was transferred in 1905 to The Rocky Mountain Cattle Company, a corporation. The abstract fails to show that The Rocky Mountain Cattle Company ever subsequently transferred its title to that forty acres, thus leaving the apparent title to that part of the tract in that company. The abstract also shows that in December 1905 a patent for the remaining eighty acres was granted to one John Findlay, but it does not show that John Findlay made any subsequent conveyance of that eighty acres. It does, however, appear that prior to the issuance of the Findlay patent to the eighty acres ,and in 1904, Findlay received a quitclaim deed for the same eighty from one Edson A. Earle but immediately quitclaimed the lands to one William L. Simpson who on June 1, 1905, quitclaimed the same to The Rocky Mountain Cattle Company. So it seems The Rocky Mountain Cattle Company never divested itself of its title traced from patent to forty acres of the tract and that John Findlay never divested himself of his title traced from patent to the remaining eighty acres. It also seems that The Rocky Mountain Cattle Company, a corporation, never made or attempted to make any conveyance of what, if any, title it received by the quitclaim from Simpson. Of course we are not concerned in this appeal with the rights or title of either John Findlay or The Rocky Mountain Cattle Company as these were finally adju-

dicated in this same action and no appeal has been taken by them. The above recitation of the abstract record is given merely to make clear what follows.

Notwithstanding the condition of the record title to the disputed lands, the abstract further discloses that on December 20, 1913, George Merrilll, G. J. Guthrie Nicholson, George Pennoyer and Mary Merrill and Sallie E. Nicholson, all of whom were complete strangers to title, gave their warranty deed which purported to convey all rights in the 120 acres unto The Mill Iron Cattle Company, a corporation. On September 18, 1916, this grantee gave its warranty deed to the oil, gas and minerals only, unto the plaintiff, Mill Iron Oil Company, and thereafter on December 8, 1916, by its further warranty deed, the Mill Iron Cattle Company conveyed the surface rights only unto George Merrill who, in turn, on December 19, 1916, conveyed such surface only to the defendant Hillberry. It will thus be seen that under Hillberry's answer and cross-petition and the stipulated evidence, there were two theories under which Hillberry might hope to support his claims—the first, by virtue of the agreement of purchase and his possession taken thereunder followed by Merrill's warranty deed, the second, through the tax sale purchase. If either of these asserted titles embraced the oil, gas and mineral rights and proved to be superior to the right and title of the plaintiff, Hillberry should of course succeed, otherwise, Hillberry must fail in this appeal.

The stipulations fail to show whether the October 1913 agreement between Merrill and Hillberry was oral or in writing, although it was intimated during argument that it was merely oral. However, it does appear by the stipulation that the purchase payment for the lands from Merrill, together with interest thereon, was made either in December 1916 or January

1917, at which time Hillberry received Merrill's deed for the property. Inasmuch as the deed of December 19, 1916, to surface rights only was the only conveyance shown by the abstract from Merrill to Hillberry, two things seem obvious—first, that payment for the lands was completed on the date shown upon the deed, i.e., December 19, 1916, and second, that the deed evidenced the fulfillment of the October 1913 agreement. It is unbelievable that Hillberry would have paid the full agreed purchase price plus accumulated interest for something less than that which he had agreed to buy. This fact of itself justifies the conclusion that the only rights gained by Hillberry from Merrill, if any, were surface rights only, and constituted a severance of surface from minerals in so far as Hillberry was concerned. It follows that Hillberry's possession under the Merrill agreement and deed was limited to the possession of the surface only. Such a possession is insufficient to support a claim of adverse possession of the minerals where, as above appears, the two interests have been severed. See Ohio Oil Company v. Wyoming Agency, 63 Wyo. 187, 179 P.2d. 773; Summers, Oil and Gas, Perm.Ed. 1A, § 138 and 1956 Cumulative Pocket Parts.

It is true that it was stipulated that Hillberry was in "sole, exclusive and unquestioned possession of all" the property from October 1913 (the asserted date of the Merrill-Hillberry agreement) to January 1917. This makes for some confusion regarding the nature and extent of Hillberry's possession. However, when all of the stipulated matter is considered together, the conviction is bred that the October 1913 agreement contemplated the sale of the surface only and, therefore, the possession taken by Hillberry from Merrill was a possession of the surface only.

It might also be noted that in Hillberry's answer, he denied plaintiff's title because of his own adverse possession of the lands and Hillberry's claimed his possession was for a period of "more than fifteen years last past and prior to the commencement of this action."

If this defense rested upon Hillberry's claim of an adverse possession under color of title stemming from the Merrill agreement, that defense must fail for the deed given pursuant to that agreement conveyed the surface rights only, the mineral rights having been previously severed from the surface by the September 18, 1916, warranty deed from Mill Iron Cattle Company to Mill Iron Oil Company. Ohio Oil Company v. Wyoming Agency, supra. If, however, that defense rested upon Hillberry's claim of an adverse possession under color of his quitclaim deed from the tax title purchaser, we consider that question to have been settled adversely to the appellant by holding of this court in Ohio Oil Company v. Wyoming Agency,' supra, where it was pointed out in substance that where the title to the minerals has been severed from the surface estate, a valid sale for unpaid taxes assessed against the surface will not carry with such sale the mineral estate.

It is equally true that any right acquired by Hill berry under his quitclaim deed from the purchaser of the tax title, other than and independent of any ensuing prescriptive right in his behalf, did not include any title to or interest in the oil, gas or other minerals, on or under the lands under the principles enunciated in the Ohio Oil Company case, supra. It should be kept in mind that under the provisions of § 32-1001, Wyoming Compiled Statutes, 1945, the mineral interest on or under lands is only made subject to assessment when and as such minerals are

produced. Hence, any such property in minerals is not made subject to assessment for taxation, until their actual production. This is made even more clear by § 32-1003, W.C.S. 1945, which concerns the valuation of that class of property. That section provides that the valuation of the minerals are to be made only when they are actually produced. This being the case it is clear that in the circumstances of this case where the mineral estate has been severed from the surface estate, the mineral estate has not as yet become subject to any assessment for taxation. In the absence of any such assessment, there could have been no delinquency and, consequently, no valid sale for unpaid taxes against the property.

There must, of course, also fail Hillberry's cross-petition for quiet title, in so far as it relies upon prescriptive right to the mineral interest which inaugurated through adverse possession under color of the Merrill agreement and deed.

The plaintiff's claim of prescriptive right to the minerals seems to hinge upon what, if any, possession of such minerals resulted by virtue of the warranty deed dated December 20, 1913, wherein strangers to title purported to convey the lands to The Mill Iron Cattle Company, a corporation. As has been previously indicated, the record before us fails to show that either Findlay or The Rocky Mountain Cattle Company ever alienated this property after having received full title thereto. Likewise, it does not appear that these owners had separated the surface rights from the subsurface rights or from the oil, gas or other minerals. In so far as Findlay and The Rocky Mountain Cattle Company are concerned, on December 20, 1913, their title to the whole of the property was intact. Similarly, whatever right or title was received by The Mill Iron Cattle Company

by the deed of December 20, 1913, was for the entire interest in the lands, both surface, subsurface and oil, gas and other minerals. It was The Mill Iron Cattle Company itself which for the first time severed the title to the several interests in the lands by conveying the surface to Merrill and the oil, gas and other minerals to Mill Iron Oil Company. Now this should be plain. If The Mill Iron Cattle Company acquired the whole title, it had the right to separate the oil, gas and other mineral rights from the surface rights. Although Findlay and The Rocky Mountain Cattle Company would seemingly have had the right to challenge the title of The Mill Iron Cattle Company, the unappealed judgment rendered by the lower court in this case concluded such rights by deciding in favor of the title of the plaintiff, the grantee of The Mill Iron Cattle Company, with respect to the oil, gas and other mineral rights, and in favor of the title of the defendant Hillberry as the successor in interest of Merrill, who was the grantee of The Mill Iron Cattle Company with respect to the surface rights. Both of these contesting parties having received their respective titles from a common source, that is to say, from The Mill Iron Cattle Company, the rule to be followed seems best stated in the following excerpt from Hecht v. Boughton, 2 Wyo. 385, 390, an action in ejectment, to wit:

"But it is an uniform principle of ejectment that if both parties claim title from the same source, it is treated for all the purposes of the case that title resided in that source; each party is estopped from denying it; and so far as respects that source, the controversy is reduced to the inquiry, which party, plaintiff or defendant, if either, has got title from that source."

This rule was also recognized in York v. James, 62 Wyo. 184, 165 P.2d. 109, 162 A.L.R. 730 a quiet title action.

Applying the above rule to this case, the plaintiff's title to the oil, gas and other minerals conveyed to it by the common grantor, is necessarily superior to that of the defendant Hillberry whose grant from that common source was expressly limited to the surface.

As we find no error in the trial court's judgment, the same must be affirmed.

Affirmed.

BLUME, C.J. and PARKER, J. concur.