84

The **SUPERIOR OIL COMPANY**, a corporation, Plaintiff,

v.

Edward (V.) **VANDERHOOF**, a single man, Orval Vanderhoof, a single man, Richland County, Montana, a quasi municipal corporation, Tribal Drilling Company, a partnership, Bright & Schiff, a partnership, J. C. Cottingham and Mrs. J. C. Cottingham, husband and wife, et al., Defendants.

Civ. No. 724.

United States District Court
D. Montana,
Billings Division.

Dec. 22, 1969.

See also, D.C., 297 F.Supp. 1086.

———◆———

Sandall, Moses & Cavan, Billings, Mont., for plaintiff.

Habedank, Cumming & Best, Sidney, Mont., for defendants Edward and Orval Vanderhoof.

William R. McNamer, Billings, Mont., and V. G. Koch, County Atty. of Richland County, Sidney, Mont., for defendant, Richland County.

ORDER AND OPINION

JAMESON, District Judge.

The sole remaining issue in this interpleader action is whether defendant Richland County is entitled to a six and one-fourth per cent royalty interest or a six and one-fourth per cent mineral interest in a 120 acre tract of land described as NE¼NE¼ and E½NW¼ of Section 19, Township 25N., Range 59E. M.P.M.

On May 10, 1940, the NE¼ of the NE¼ of Section 19 was conveyed by Richland County to Edward V. Vanderhoof and the E½ of the NW¼ was conveyed to Edward Vanderhoof. Each deed contained the following reservation:

"Further reserving unto said Grantor six and one-fourth (6¼%) per cent of all minerals contained in and hereafter mined, produced, extracted, or otherwise taken from the above described property."

On January 4, 1947, Edward Vanderhoof and his wife conveyed the E½NW¼ to Orval Vanderhoof and Edward V. Vanderhoof.[1] A correction deed was executed on October 30, 1947. On December 13, 1952, Edward V. Vanderhoof conveyed an undivided one-half interest in the NE¼NE¼ to Orval Vanderhoof by quitclaim deed.

On June 26, 1951, Edward V. Vanderhoof and Orval Vanderhoof entered into an oil and gas lease with H. H. Phillips covering a total of 1040 acres, including the 120 acre tract, providing for a delay rental of $104 annually, and warranting the title to the land covered by the lease. On May 16, 1952, a change of depository was executed, reciting that the lessors were the owners "of a full interest in

and to the oil and gas and other minerals, subject to the aforesaid lease".

On April 1, 1953, a decree was entered by the District Court of the Seventh Judicial District of the State of Montana in and for the County of Richland, quieting title in defendants Edward V. Vanderhoof and Orval Vanderhoof, the decree recognizing the following interest:

"All of the above described property being subject to a reservation in and to Richland County, Montana, of 6¼ per cent of all minerals contained in, mined, produced, extracted or otherwise taken from said lands; * * *"

On December 16, 1953, Vanderhoofs conveyed a "1% royalty" to J. C. Cottingham.[2]

On April 20, 1962, the Vanderhoofs entered into an oil and gas lease with I. H. Cunningham covering 1040 acres, including the 120 acre tract, providing for an annual delay rental of $1040, and warranting the title of the lessors. This lease was assigned to plaintiff, Superior Oil Company, on May 22, 1962. On June 30, 1966, Richland County at the request of the oil company, executed a ratification of the oil and gas lease, the ratification instrument containing the following provision:

"The execution and delivery of this instrument shall not be construed as a disclaimer or prejudice the claim of Richland County, Montana, to a Six and One-Quarter Percent (6¼%) royalty interest in the oil, gas and other minerals produced and saved from the land hereinabove specifically described."

On September 13, 1965, Edward V. Vanderhoof and Orval Vanderhoof con-

---

1. It is recited in the agreed statement of facts that both conveyances were made by Richland County to "Edward Vanderhoof", but an abstract of title filed as an exhibit shows the conveyances set forth in this opinion. Edward *V.* Vanderhoof is one of the record owners and one of the defendants in this action.

2. J. C. Cottingham represented Vanderhoofs in the quiet title action. His address on the complaint was given as Richland County Courthouse, so presumably he was also county attorney of Richland County. The county did not make an appearance in the quiet title action.

veyed to Rex H. Baker "an undivided One-Half (½) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" (describing the 1040 acres, including the 120 acre tract) and reciting, "It is the intention of the parties to convey 520.00 mineral acres". Vanderhoofs received a payment of $40,000 for this conveyance. In turn Baker conveyed an undivided "328.5915/1040.00ths interest" to Headwaters Oil Company and a "191.-4085/1040.00ths" interest to Bright & Schiff.

None of the foregoing conveyances made any reference to the reservations of Richland County. The issue regarding the nature of the county's interest in the 120 acre tract was first raised at the time of the trial of other issues of this action on January 20, 1969. It is the court's recollection that counsel for the Vanderhoofs shortly prior thereto had checked the title to the 120 acre tract and concluded that Richland County had reserved a mineral rather than a royalty interest. The pretrial order had described this with other land as "covered by the royalty interest owned by J. C. Cottingham and Richland County".[3]

The reservation was authorized by Section 4481.2, Revised Codes of Montana, 1935, which read:

"Counties may reserve mineral right on conveying real property—limitation—payments, how made. The board of county commissioners of any county in this state when making sales and conveyances of real property, may in such cases as in its judgment it is for the best interests of the county so to do, reserve to the county, and except from the sales and conveyances, *not to exceed six and one-quarter (6¼%) per centum of all minerals therein or thereafter mined, produced, extracted or otherwise taken therefrom*, and in such cases it shall be provided in each conveyance that if the purchaser, his or its heirs, executors, administrators, successors, grantees, assigns, lessees or any other persons, firm or corporation, shall mine, produce, extract or otherwise take any minerals from the real property described therein, the one so doing shall at such time or times as the owner of such reservation, or of any interest therein, shall designate, *pay in cash to the owner of such reservation*, or to each owner of an interest therein in proportion to his interest, *the fair market value of the reserved per centum of all such minerals mined, produced, extracted or otherwise taken from said real property*, as the value and purchase price of the interest of the owner or owners of said reservation in the minerals so mined, produced, extracted or otherwise taken from said real property, and this obligation shall run with the unreserved portion of said minerals and be binding and obligatory upon any and all persons who mine, extract, produce or otherwise take any of the minerals from said real property. When the county is the owner of the reservation or of any interest therein, such payment shall be made to the county treasurer at such time

---

3. There was received in evidence as Exhibit K a copy of a title opinion submitted to plaintiff by its counsel, dated June 23, 1967, (on verbatim abstract last certified June 7, 1967, and containing all of the instruments herein described), in which the mineral ownership of this tract of land is set forth as follows:

"Edward V. Vanderhoof
and Orval Vanderhoof:              —50%.
Headwaters Oil Company:            —328.5915/1040ths.
Bright & Schiff:                   —191.4085/1040ths."

Under "Landowners Royalty", Richland County is shown as the owner of "6¼%".

In a prior opinion dated November 23, 1965, (Ex. J–F) counsel had expressed doubt as to whether the reservation was a mineral or royalty interest and recommended a stipulation between the county and Vanderhoofs that a mineral interest was intended. Subsequently the ratification agreement was executed by the county, indicating that the county claimed a royalty interest.

or times as the board shall designate." (Emphasis supplied).

There is no Montana case construing the foregoing section. It was repealed by Chapter 171 of the Session Laws of 1941, which also provided that on sales of real property "the county may reserve not to exceed six and one-fourth per cent (6¼%) royalty interest in the oil, gas, and minerals produced and saved from said land." This Act also confirmed and declared legal and valid "all reservations of royalty interest in oil, gas, and minerals heretofore made or attempted to be made by counties in the sale of tax deed lands   *   *   *".[4]

The Vanderhoofs contend that Marias River Syndicate v. Big West Oil Co., 1934, 98 Mont. 254, 38 P.2d 599, "dictates that the interest must be considered a mineral interest". In Marias a deed was given "Reserving unto the said parties of the first part a 12½% interest and royalty in and to all oil and gas and other minerals of whatsoever nature, found in or located upon or under said land or premises above described, or that may be produced therefrom."

In holding that this provision constituted an exception and a retention of a mineral interest, the court said in part:

"The deed containing this exception contains no express obligation on the part of any of the parties to discover or produce oil and gas, or either of them. Defendants argue that because of the use of the word 'royalty' in the provision, and the additional words 'in and to all oil and gas   *   *   *   found in or located upon or under said land,   *   *   *   or that may be produced therefrom,' their contention as to the interpretation of this conveyance is sustained.

"The word 'royalty' has a definite and well-understood meaning in oil operations. It means a share of the product or profit paid to the owner of the property. (Citations omitted). The right to take a profit from the lands of another within the common-law classification may be regarded as a profit à prendre. (Citation omitted). This right, if it belongs to the individual distinct from the ownership in other lands, takes the character of an interest or an estate in the land itself. It is an interest in the land, although incorporeal. (Citation omitted). Such an interest in land may be conveyed (Citation omitted), and may likewise be excepted or reserved from conveyance.

"It is argued that the term 'royalty' has a well-defined meaning indicative of a portion of the oil produced from land, free and clear of the cost of its discovery and production. In cases where oil and gas leases are involved, it is quite universal to refer to the lessor's portion of the oil, or the proceeds thereof, as 'royalty', and in these instances it is likewise universally provided in leases that the lessor shall receive his portion or per centum of the oil produced, free and clear of all costs of discovery and production. The lessor's portion of the oil or royalty in the case of an oil and gas lease is free and clear of the cost of discovery and production, by reason of the express provisions of such oil and gas leases.

"But we have, as already noted, no such express provision here, nor any

4. Chapter 179 of the Session Laws of 1951 amended Section 16–1122 R.C.M. 1947 to read: "All mineral reservations *and all royalty reservations* heretofore made by counties in this state *in conveyances of real property* whether the same are of a less or greater percentage *or are different than was authorized or required by law at the time such reservations were made,   *   *   *   are hereby* ratified, confirmed and validated." (The portion italicized modified the language contained in prior validating statutes). A validating provision in Chapter 59 of the Session Laws of 1965, was worded the same as the 1951 Act. See 16–1122 and 16–1122.1, R.C.M.1947. See also Ch. 187 of the Session Laws of 1949 and Sections 84–4191 and 84–4196, R.C.M. 1947.

express obligation on the part of any person to discover and produce oil or gas. This reservation or exception in effect legally and successfully severed the 12½ per cent interest in the oil and gas and other mineral in and under the land from the residue of the oil, gas, and mineral and surface rights conveyed to the grantee in the deed in question. Separate interests in the oil and gas were thereby created, and the owners of these respective interests became the owners of the oil and gas as tenants in common. * * * (98 Mont. at 264, 265, 38 P. 2d at 601.)

There is language in the Marias River case which, standing alone, would lend some support to the Vanderhoofs' position. The two reservations, however, are distinguishable. In Marias, the seller reserved a *"12½% interest and royalty"* in the oil and gas or other minerals *"found in or located upon or under said land * * * or that may be produced therefrom"*. Here the county reserved 6¼% "of all minerals *contained in and hereafter mined, produced, extracted, or otherwise taken * * *"*. The significance of the differences in wording will be considered further infra in the light of later decisions of the Montana court.

The rule set forth in Marias has been clarified in subsequent decisions, most recently in the case of Stokes v. Tutvet, 1958, 134 Mont. 250, 328 P.2d 1096. This case reviews in detail the prior decisions of the court defining "mineral interest" and "royalty". The court said in part:

"Whether a royalty or mineral interest has been granted depends in each case on the incidents of the interest conveyed. This in turn necessitates analyzing a 'royalty' as distinguished from a 'mineral' interest.

" * * * *

" 'Royalty is a share in production. As applied to an oil and gas lease, it means the share of the oil which is received by the lessor from

production under the lease in return for permission to use the property by withdrawing the oil therefrom. *In its broadest sense, however, it refers to an interest that the landowner may create by outright grant or reservation either before or after the execution of an oil and gas lease.* When used in this sense the ownership of royalty gives no rights to enter upon the land for any purpose or to interfere with the landowner in any way.' Emphasis supplied. Sullivan, Handbook of Oil and Gas Law, page 218." (134 Mont. at 256–257, 328 P.2d at 1100).

" * * * *

"Since 'royalty' and 'nonparticipating royalty' are shares in production only, certain words denoting a share in production have been used to delimit the interest conveyed. Likewise a mineral interest being a severing of the mineral fee is often described in terms of ownership under the ground. Thus, 'produced and saved' have been associated with royalties, 'oil and gas in and under and upon' the land, have been associated with a mineral interest. * * * "

"The problem of course becomes most acute when words denoting a royalty interest are used in combination with those denoting a mineral interest." (134 Mont. at 259, 260, 328 P.2d at 1101).

With particular reference to Marias, the court said:

"The Marias River case has been frequently criticized for three reasons: (1) That this court failed to give proper emphasis to the fact the word 'royalty' had been used in the reservation; (2) that it had not given sufficient prominence to the words 'or * * * produced therefrom', denoting a share in production rather than a share in the minerals; and (3) the fact this court failed to recognize that a landowner could convey or reserve a

'perpetual nonparticipating royalty'[5] * * * prior to leasing of the land for oil and gas purposes.

"* * * *

"Since the Marias River case was decided, however, this court has continually adhered to the decision rendered therein. However, we have forsaken our view that absence of an oil and gas lease on land prior to execution of a reservation has any particular importance in determining the interest reserved. See for example Rist v. Toole County, supra (117 Mont. 426, 159 P.2d 340 (1945)). Since the Marias River case this court has, however, emphasized the *absence* or presence of the words, 'in, under or upon', and the presence of the words 'produced and saved.'" (Emphasis in original (134 Mont. at 260, 261, 328 P.2d at 1101, 1102).[6]

The court found the reservation in Stokes to be ambiguous, particularly in view of the fact that the sellers contended that a construction along the reasoning of Marias was never the intention of the parties. The case was remanded to the trial court to determine the intention of the parties, if possible, and it was held that parol evidence could properly be considered in determining that intent.

In the instant case the intent of the parties should be ascertained if possible from the deed itself taking into consideration all of its provisions.[7] Any ambiguity or uncertainty, however, may be resolved by other evidence showing intent. Moreover, in this case we are concerned not only with the intention of the parties, but also with the intention of the legislature in the enactment of the various statutes relating to reservations by counties of interests in oil and gas. The decided cases and textwriters provide guidelines in resolving these questions and determining whether a royalty or mineral interest was reserved.

The practical effect of the distinction between a mineral and royalty interest in terms of production is well summarized in 1 Williams and Meyers, Oil and Gas Law, § 303 pp. 445, 446:

"The quantum of production the owner is entitled to is determined by the distinction * * *. Thus the owner of a $\frac{1}{16}$[8] royalty is entitled to one out of 16 barrels of oil produced, free of the costs of production. The owner of a $\frac{1}{16}$ mineral interest is entitled to $\frac{1}{16}$ of lease royalty, if he joined in the lease, or $\frac{1}{16}$ of production less $\frac{1}{16}$ of the costs of production (drilling, equipping and operating expenses) if he did not join in the lease. Thus the owner of a $\frac{1}{16}$ mineral interest who joins in executing a lease calling for $\frac{1}{8}$ landowner's royalty is entitled to $\frac{1}{16}$ of $\frac{1}{8}$ royalty, or one out of every 128 barrels of oil produced, free of costs. A royalty owner will receive eight times as much production as a mineral owner, where the lease provides for $\frac{1}{8}$ royalty and where the fraction is the same figure."

Sullivan in his work, Handbook of Oil and Gas Law (1955) summarizes the means of differentiating between royalty and mineral interests by concluding

5. The court defined the term as follows: "'Non-participating royalty has a well-understood meaning in the oil industry. It may be defined as an interest in the gross production of oil, gas and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the bonus payable for, or the delay rentals to accrue under oil, gas and mineral leases executed by the owner of the mineral fee estate. The exclusive-leasing privilege remaining in the mineral fee owner is commonly referred to and known as the 'executive right'. Jones, Non-Participating Royalty, 26 Texas L.Rev. 569. See also 3A Summers' Oil and Gas, Section 599 at p. 276." (134 Mont. at 258, 328 P.2d at 1101).

6. See also Mitchell v. Hannah, 1949, 123 Mont. 152, 208 P.2d 812.

7. See Wyrick v. Hoefle, 1959, 136 Mont. 172, 346 P.2d 563.

8. 6$\frac{1}{4}$%.

that a "royalty interest, in the strict sense, is distinguished from a mineral interest by the absence of any operating rights and the denial of participation in bonus and delay rental payments. In determining what interest is created by a particular instrument, the intent of the parties as disclosed by the entire instrument is the deciding factor. The terms of the instrument and not its name determine its nature and character. Thus, 'the intention must be gathered primarily from a fair consideration of the whole instrument, and the language employed therein, and the construction given it should harmonize with the terms of the deed, including its scope, subject matter, and purpose' [Citing Fleming v. Ashcroft, 142 Tex. 41, 175 S.W.2d 401, 406 (1943)]" (at pages 219, 220).

■ Many factors may be considered in determining whether a mineral or royalty reservation is intended.[9] Of primary importance is the use of the term "in, under or upon" as indicating a mineral interest, and "produced and saved" as indicating a royalty interest. The Montana court is consistent with a majority of the jurisdictions in holding that these phrases are the most significant guides to the parties' intentions. As the Montana court noted in Stokes v. Tutvet, however, the problem becomes acute when both terms or their equivalents are used. Other factors must then be considered, with no single factor controlling.

The Vanderhoofs rely upon the clause "all minerals contained in". That language, however, is distinguishable from the determinative clause "minerals of whatsoever nature, found in or located upon or under said land" in Marias. While the deed from Richland County did not use the words "produced and saved", words having a similar effect are found both in the deed and court decree, i. e., "mined, produced, extracted, or otherwise taken". While language suggesting both interests appears in each conveyance, in Marias the disjunctive "or" separates the two clauses, while in the deed in question the conjunctive "and" was used. In other words, the deed refers to minerals contained in and produced.

It may be noted that the reservation makes no provision for ingress or egress to the land or for the county to participate in any bonus or delay rental; nor does the deed provide that the county should join in any lease.[10] It is recognized that these are not necessary requirements to establish mineral interests. They are factors which, with other provisions of the deed and authorizing statutes, may be considered in determining intent.

■ Moreover, the extrinsic evidence is persuasive that all parties regarded the county's reservation as a royalty interest. No mention is made of the county's reservation in any of the numerous deeds and leases. While Vanderhoofs testified that they did not know what the county had reserved, all of the transactions are more consistent with a finding that a royalty interest was intended. Had the reservation been a mineral interest, the county of course would have been required to join in the leases and

---

9. See 1 William & Meyers, supra, §§ 302, 303, and 304, (pp. 443 to 517) for a discussion of the various consequences and effects in determining which interest is reserved or conveyed.

10. In Voyta v. Clonts, 1958, 134 Mont. 156, 328 P.2d 655, 660, the court quoted with approval the following from St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169, 174:

"The owner of the mineral royalty, whose role is entirely passive, has no

privilege of ingress or egress to the land, and, hence, cannot produce the minerals. Furthermore, his consent for the execution of a lease is not required, nor is he entitled to participate in the bonus or the delay rentals that may be paid under its terms. The right that he has is but an appendage of the right of the mineral owner, and is merely one to share in the production of oil, gas and other minerals if and when they are produced."

would have been entitled to any bonus payment and delay rental for its mineral interest. Under a royalty reservation the Vanderhoofs alone could give a valid lease and would be entitled to the entire bonus payment and delay rentals regardless of the royalty interest reserved by the county. There is no evidence that the county ever received any bonus or delay rental, even when it executed the ratification agreement.

■ The fact that Richland County, at the request of plaintiff, executed a ratification of the oil and gas lease in 1966 is of little significance, particularly in view of the express recital that the ratification would not prejudice the claim of the county to a royalty interest. Moreover, as noted supra, counsel for the plaintiff in their final title opinion referred to the county's interest as "landowner's royalty".

■ Nor is the decree quieting title particularly significant. It simply sets forth the reservation as it appeared in the deeds. Obviously no issue was raised in that action as to whether the reservation was a mineral or royalty interest. As noted supra, apparently the county attorney represented the Vanderhoofs in the action. No appearance was made by the county. Shortly thereafter counsel acquired a "one per cent royalty" which was clearly recognized by everyone as a royalty interest. In the other quiet title action mentioned in counsel's brief, the deed containing the reservation was executed subsequent to the 1941 amendment and clearly specified a royalty interest.

In the present action, the complaint included Richland County's interest as a royalty interest, as did all subsequent pleadings, through the pretrial order.

The construction of the reservation as a royalty interest is consistent with the apparent intent of the county in reserving an interest in the oil and gas. In construing the deed as reserving a royalty interest the county receives a $\frac{1}{16}$ royalty, or one-half of the usual $\frac{1}{8}$ royalty interest, rather than $\frac{1}{16}$ of the

$\frac{1}{8}$ royalty. The county is not required to join in a lease to gain a share of the royalty. It retains an interest only in producing wells on the land it has sold. It is not involved or directly connected with the search for oil, but merely benefits from its discovery.

Admittedly the statute authorizing the reservations by the county was uncertain and ambiguous. In my opinion, however, a proper construction of the various statutory provisions as a whole supports the conclusion that a royalty interest was intended. Vanderhoofs argue that section 16–1122 and 16–1122.-1 specifically confirm and ratify "all mineral reservations" theretofore made by counties in the conveyance of real property. Richland County relies upon section 84–4191 (En.Sec. 2, Ch. 171, L. 1941; Amd.Sec. 1, Ch. 187, L.1949) which authorizes a county to reserve not to exceed six and one-fourth per cent royalty interest, and section 84–4196 (En.Sec. 7, Ch. 171, L.1941) which ratified and confirmed "all reservations of royalty interest" theretofore made by counties covering tax deed lands.

Obviously section 84–4191 and 84–4196 govern with respect to all sales of tax title land subsequent to the enactment of Chapter 171 of the Laws of 1941. Section 16–1122 and 6–1122.1 generally confirm all "mineral reservations and all royalty reservations" theretofore made by counties "whether the same are of a less or greater percentage or are different than was authorized or required by law at the time such reservations were made."

■ In Chapter 171 of the Laws of 1941 the legislature used the same percentage as set forth in section 4481.2 R.C.M.1935, under which the reservations were made. It is significant also that the provision in the 1941 act (section 7) confirming and validating prior reservations refers specifically to "all reservations of royalty interest in oil, gas, and minerals heretofore made or attempted to be made". It is reasonable to infer that the statute was intended to clarify the somewhat uncertain and ambiguous

language in the prior statute rather than provide for a totally different interest.

 This opinion shall constitute the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. Counsel for Richland County are directed to prepare, serve and lodge form of judgment consistent with this opinion.[11]

---

11. Richland County has urged by motion and brief that the question be certified to the Supreme Court of Montana under its Rule 1, as amended January 31, 1967.

Particularly in view of my reliance upon evidence showing the intent of the parties, I question the propriety of certification.