Clara LIEN and Richland County, Montana, Plaintiffs,

v.

Kenneth W. SIMONS and Eva L. Spies, heirs at law of Walter Simons and Hattie Simons, husband and wife, deceased; Shell Oil Company; et al., Defendants and Third-Party Plaintiffs,

v.

Clara LIEN; Richland County, Montana, a body politic and corporate; Garfield N. Servo and Norma Servo, husband and wife; Peter Randall Servo and Marilyn Servo, husband and wife; Nicholas A. Servo and Cathy Servo, husband and wife; Douglas B. Servo, a single man; Gayle S. Harp and William Harp, wife and husband; Sharon A. Woodworth and Robert L. Woodworth, wife and husband; Lynda Servo Eaton and Thomas Eaton, wife and husband; Bergliot Morse and Alvis L. Morse, wife and husband, Third-party Defendants.

No. CV–79–181–BLG.

United States District Court,
D. Montana,
Billings Division.

Sept. 23, 1981.

Thomas R. Halvorson, Sidney, Mont., Richard W. Anderson, Billings, Mont., for plaintiff Lien & third-party defendants.

V. G. Koch, Sidney, Mont., for Richland County.

W. H. Bellingham, Moulton, Bellingham, Longo & Mather, Billings, Mont., for defendants and third-party plaintiffs.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

The issue presented by the parties' cross motions for summary judgment is whether a tax deed purporting to convey mineral rights is effective against a prior reservation of mineral rights by deed. Because it is well-settled in Montana that minerals in place may not be taxed, we conclude that the tax deed does not convey the mineral rights. The minerals thus belong to the defendants.

## I. FACTUAL BACKGROUND

On November 8, 1918, Walter and Hattie Simons, defendants' predecessors in title, conveyed by deed certain property located in Richland County, Montana, to Samuel and Josephine Wortham, reserving "All coal and mineral rights." The deed was not recorded until September 13, 1919, some ten months after it was originally executed. Taxes for 1919 were assessed by Richland County against Walter Simons, who was still the record owner at the time of assessment. The taxes became delinquent on November 30, 1919, when neither Simons nor Wortham paid them. On January 19, 1920, County Treasurer's Certificate of Tax Sale, covering subject lands, was issued in favor of Richland County. Taxes for the years of 1920 through 1931 were assessed against Wortham, and certificates of tax sale were issued each year to Richland County. No taxes were ever paid by either Simons or Wortham and no redemption was made by any party.

In 1932, Richland County conducted tax sale proceedings which culminated in a tax deed dated November 19, 1932, issued to Richland County. The tax deed was recorded on December 10, 1932. On May 5, 1938, Richland County by deed conveyed the subject land to plaintiffs' predecessor in title, Wayne Swigart, Richland County reserving 6¼% royalty on all minerals. On May 10, 1949, the heirs of Swigart, plaintiffs' predecessor in title, brought a quiet title action to confirm the tax deed. On June 6, 1949, they obtained a confirmation deed which was recorded on June 20, 1949.

Plaintiff Clara Lien is a successor in interest to the 1932 tax deed. Because of its reserved 6¼% royalty interest, Richland County is also a plaintiff. The defendants, Kenneth W. Simons and Eva L. Spies, are successors in interest to the original grantor, Walter Simons. Shell Oil Company, also a defendant, is lessee from Simons and Spies under an oil and gas lease executed on September 17, 1976. The other named third party defendants are also titleholders under the 1932 tax deed.

On November 9, 1979, plaintiffs Clara Lien and Richland County, successors in interest to the 1932 tax deed, filed an action in Montana District Court for Richland County seeking to quiet title to the mineral rights on the property against defendants Kenneth W. Simons and Eva L. Spies. On November 21, 1979, the case was removed to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1976). On April 11, 1980, the defendants filed a counterclaim against plaintiffs and a third party complaint against some eight additional successors in interest to the 1932 tax deed. On February 27, 1981, plaintiffs, defendants, and third-party defendants filed motions for summary judgment, which are presently before the Court.

## II. ARE MINERALS IN PLACE TAXABLE?

This case presents rather perplexing issues of Montana law involving reservation by deed of mineral interests in land. In this case, we have before us two rival groups of title claimants to the mineral rights—one claiming through reservation in a 1918 deed and one claiming through a 1932 tax deed. The tax deed claimants argue that the tax deed attached before the 1918 deed reservation became effective and that the doctrine of paramount title cuts off any claims predating the tax sale. The claimants relying upon the 1918 deed reservation argue that taxes assessed subsequent to the deed reservation can have no effect upon the reservation's validity. This is a case of first impression in this jurisdiction and the Montana Supreme Court has not considered the precise question here presented.[1]

The first issue which we must face is whether taxes may be validly assessed against a mineral interest or whether mineral interests are exempt from taxation. It is well-settled in Montana that the title to mineral interests in land, including oil, gas, and coal interests, may be segregated in whole or in part from the rest of the fee-simple title. *Stokes v. Tutvet*, 134 Mont. 250, 328 P.2d 1096 (1958); *Voyta v. Clonts*, 134 Mont. 156, 328 P.2d 655 (1958); *Rist v. Toole County*, 117 Mont. 426, 159 P.2d 340 (1945). There is also little doubt that such interests may be separately conveyed:

> The owner of the fee simple, or the absolute owner of a tract of land, has all of the rights recognized by the law in both the surface and the minerals. In disposing of his ownership he can transfer all of his rights in the entire premises or in a part thereof.

*Sullivan, Assignments by the Landowner and the Lessee*, 17 Mont.L.Rev. 64 (1955). Clearly, then, the landowner, as grantor, can sell the surface and retain the minerals, in which event there is severance of his interest into a surface estate and a mineral estate.

In the instant case, the fee simple absolute grantors, Walter Simons and his wife, conveyed the surface estate to grantee, Wortham, and expressly reserved the mineral estate on November 8, 1918: "All coal and mineral rights are reserved by parties of the first part." Exhibit A of the Agreed Statement of Facts. Thus, there is no question that the grantors effectively reserved a mineral estate in the conveyed lands.[2] *Wyrick v. Hoefle*, 136 Mont. 172, 346 P.2d 563 (1959); *Rist v. Toole County*, 117 Mont. 426, 434, 159 P.2d 340 (1945). *See* 1 *Williams and Meyers, Oil and Gas Law*, §§ 303, 304.2, pp. 445, 446 (1975); *Sullivan, Handbook of Oil and Gas Law* 207 et seq. (1955).

---

1. There is no motion before this Court that this question be certified to the Supreme Court of Montana under its Rule 1, as amended January 31, 1967. Nor would this Court deem such a motion appropriate.

2. As of the date of conveyance deed, November 8, 1918, there is a presumption of delivery and acceptance. MCA § 70–1–509 (1979); *Roth v.*

*Palutzke*, 137 Mont. 77, 350 P.2d 358 (1960); *Cook v. Rigney*, 113 Mont. 198, 126 P.2d 325 (1942). This date of conveyance deed, November 8, 1918, and the date of recording, September 13, 1919, are critical, for, as it will be shown later, this is determinative as to whether the 1919 tax lien attached to the reserved mineral interest.

Montana law on taxation of mineral interests is somewhat bewildering. Two cases, *Northern Pacific Railway Co. v. Mjelde*, 48 Mont. 287, 137 P. 386 (1913), and *Anaconda Copper Mining Co. v. Ravalli County*, 52 Mont. 422, 158 P. 682 (1916), hold every interest in land taxable.[3] But another case, *Northern Pacific Railway Co. v. Musselshell County*, 54 Mont. 96, 169 P. 53 (1917), states, with an ambiguous, qualified overruling of the *Mjelde* case, that minerals in place (or a mineral estate without production) reserved in a conveyance are not taxable but the expressly reserved right to explore is an interest subject to assessment and taxation.

In *Musselshell County*, the Supreme Court of Montana, considering the issue of "whether the reservation in the deed which includes only coal in an undeveloped condition and not yet transformed into a mine is a proper subject for taxation," held as follows:

The reservation in question is dual: A corporeal hereditament, as to the coal and iron; and incorporeal hereditament as to the right to enter the lands conveyed .... In the nature of things, the latter could not be a mine, but it is property ... not exempt, and therefore taxable .... With the former, however—the corporeal hereditament—the situation is somewhat different. It, too, is property; but it consists, by the hypothesis, of coal or iron in place; coal or iron in place may be a mine ..., and we are convinced that it is such within the meaning of the word as used in section 3 of Article XII.

*Musselshell County, supra*, 54 Mont. at 112, 169 P. 53.[4] Thus the reservation of minerals in place constitutes a corporeal hereditament, and, as such, cannot be taxed because it is a "mine" expressly exempt from the burden of taxation by the Constitution of Montana as it existed in 1917.[5] In *Musselshell County, supra*, 54 Mont. at 107–108, 169 P. 53, the Montana court also held, before its rehearing motion:

So far as these views are in conflict with the final conclusion announced in the

**3.** In the *Mjelde* case, the Montana Supreme Court held:

From the very act of making the reservation, the presumption arises that each interest has some appreciable value, or the reservation would not have been made. Taxation is the rule, exemption is the exception; and, if either of these rights in fact is valueless, the burden is upon the party, claiming to come within the exception, to allege and prove the facts necessary to bring his property within the favored class .... The difficulty which may confront the assessor in determining the full cash value of a property interest of this character cannot operate as a factor in characterizing the interest itself.

*Mjelde*, 48 Mont. at 304–305, 137 P. 386.
In *Anaconda Copper Mining Co.*, the Montana Supreme Court held, three years after *Mjelde*, as follows:

It is settled by the Constitution and statutes of this state and decision of this court that the reservations mentioned constitute property which is subject to taxation.

*Anaconda Copper Mining Co. v. Ravalli County*, 52 Mont. 422, 425, 158 P. 682 (1916).

**4.** In *Cranston v. Musselshell County*, 156 Mont. 288, 292–93, 483 P.2d 289 (1971), the Montana court explained the holding in this way:

The rationale seems to be that in one situation the "reserved right" is a distinct taxable entity .... In the others, being the "conveyed right," the right is appurtenant to the mineral right with no independent taxable status.
That this distinction is narrow and almost nonexistent in logic, we concede. However, historically the distinction has been recognized, as it must, to have made it constitutional to tax the "reserved" right of entry to explore.

**5.** Art. XII, Sec. 3, of the Constitution of Montana provides:

All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims shall be taxed as provided by law.

*Mjelde Case*, the latter is to be considered as overruled.

The confusion about whether mineral interests are taxable arises because the "overruled" *Mjelde* case has been cited with approval in subsequent cases after *Musselshell County. See, e. g., Rist v. Toole County,* 117 Mont. 426, 432, 159 P.2d 340 (1945); *Standard Oil Co. v. Idaho Community Oil Co.,* 98 Mont. 131, 139, 37 P.2d 660 (1934). Thus, there seem to be two surviving lines of authority holding that mineral interests both are and are not taxable.

■ Though these cases seem to be in direct conflict, it is the opinion of this Court that under the law of Montana minerals in place are not taxable because they are corporeal.[6] Therefore, there exists no property for Richland County to assess or attach a tax lien against except the surface. The defendants and third party plaintiffs, as successors to the grantor owner of a reserved severed mineral estate, still own the minerals which did not pass with a tax deed arising after the conveyance deed.[7] *See Sullivan, Handbook of Oil and Gas Law* 489–90 (1955); *Rist v. Toole County,* 117

Mont. 426, 159 P.2d 340 (1945); "Tax Deeds and Defendable Titles," 22 *Rocky Mountain Mineral Law Institute* 513. *Cf., Barthold v. Dover,* 153 So. 49 (La.App.1934); *Sawey v. Barr,* 52 N.M. 358, 198 P.2d 801 (1948); *Jenkins v. Frederick,* 208 Okl. 583, 257 P.2d 1058 (1953); *Cornelius v. Jackson,* 201 Okl. 667, 209 P.2d 166 (1949), *app. dismissed,* 335 U.S. 906, 69 S.Ct. 412, 93 L.Ed. 440 (1949); *Secrest v. Williams,* 185 Okl. 449, 94 P.2d 252 (1939); Annot., 56 A.L.R.2d 621, 622 (1957).

### III.  DOCTRINE OF PARAMOUNT TITLE

■ Having decided that minerals in place are not separately taxable, we must next determine what effect the doctrine of paramount title has upon the reserved mineral interests. In Montana a tax deed creates a paramount title.[8] Paramount title, by its nature, is not derivative but creates a new title in the nature of an independent grant from the sovereign, striking down the former owner's fee title. *Rist v. Toole County,* 117 Mont. 426, 159 P.2d 340 (1945); *State ex rel. Great Falls v. Jeffries,* 83

---

**6.** The plaintiffs would argue that the minerals in place are to be included in the assessment of the surface. That is not the law of Montana. The law of Montana is that minerals in place are not taxed. *Lehfeldt v. Adams,* 130 Mont. 395, 303 P.2d 934 (1956); *Northern Pacific Railway Co. v. Musselshell County,* 54 Mont. 96, 169 P. 53 (1917). *See also, Milliron Oil Co. v. Connaghan,* 76 Wyo. 330, 302 P.2d 256 (1956); *Ohio Oil Co. v. Wyoming Agency,* 63 Wyo. 185, 179 P.2d 773 (1947).

**7.** The right of an owner of a reserved mineral estate to request that severed minerals be separately assessed is optional. R.C.M. 1907, § 2550 (now MCA § 15–8–702(1) (1979)) provides that:

> *Persons desiring to be listed.* (1) Lands once described on the assessment book need not be described a second time, but any person claiming the same and desiring to be assessed therefor *may* have his name inserted with that of the person to whom such land is assessed.

[Emphasis supplied.]

The word "may" is used in a permissive and not mandatory sense. Therefore, there is no affirmative duty on the part of the mineral owner to request a separate tax assessment and a failure to make such a request cannot

render the mineral title vulnerable to a subsequent tax deed.

**8.** R.C.M. 1907, § 2655 (now MCA § 15–18–403 (1979)) provides in part:

> *Title conveyed by deed—procedure to cure defects.* (1) All deeds executed more than 3 years after any tax sale shall be deemed to convey to the grantee the absolute title to the lands described therein as of the date of the expiration of 3 years following the date of sale, including all the right, title, interest, estate, lien, claim, and demand of the state of Montana and of the county in and to said real estate and including the right, if said tax deed or tax sale or any of the tax proceedings upon which said deed may be based shall be attacked and held irregular or void, to recover the unpaid taxes, interest, and penalties which would accrue if said tax proceedings had been regular and it was desired to redeem said property, free of all encumbrances except the lien for taxes which may have attached subsequent to the sale and except when the land is owned by the United States or the state, in which case it is prima facie evidence of the right of possession accruing as of the date of the expiration of such period for redemption.

Mont. 111, 116, 270 P. 638 (1928). The issue now before us is whether a paramount title of a tax deed extinguishes a prior reservation of the minerals. We think not. Although the paramount title statute, given the benefit of judicial construction of the text for legislative intent, could be broad enough to include minerals as an "interest" extinguished by operation of paramount title, we think the Montana legislature never intended for this statute to include minerals legally severed from the surface. The paramount title doctrine cannot apply to a vested mineral estate reserved prior to any delinquent tax assessments upon the surface estate.

It would be inequitable to hold otherwise. To make the title of the grantor who reserves a mineral estate contingent upon the grantee's timely payment of taxes is the equivalent of deprivation of due process of law and amounts to taking without just compensation. The legislators who drafted the paramount title statute could not have intended this result. The grantor who has reserved a mineral estate has freed himself from any subsequent tax assessment and cannot be stripped of title due to a surface owner's failure to pay taxes.

### IV. STATUTORY ATTACHMENT OF LIEN

The final issue to be resolved is the date upon which the tax lien attached. If the lien attached to the land before an effective severance of the reserved mineral estate had been made, the reserved mineral interest would still be subject to the assessed taxes. The county's taxes upon real property for the year 1919 attached by statute as of the first Monday of March, 1919.[9] The grantor had severed and reserved a mineral estate interest by conveyance deed on November 8, 1918, although this deed was not recorded until some ten months later. The

plaintiffs would have the statutory tax lien attachment intercede and ultimately divest the defendants of minerals. This the Court will not do.

■ Under the recording statutes, it would appear that the unrecorded deed took effect as between Simons and Wortham as of the date of execution. R.C.M. 1907, § 4687, now codified at MCA § 70–21–102 (1979). Thus Wortham became liable to Simon for the taxes assessed even though Simon may still have been liable to the county. See R.C.M. 1907, § 3550, now codified at MCA § 15–8–702(2) (1979). However, it makes no difference here whether we accept the date of execution or the date of recording as the date of legal severance controls. Even if the severance was not valid until the later date of recording, the tax lien did not attach to the land until after severance. The actual assessment by the county, November 30, 1919, and the certificate of tax sale, January 19, 1920, both occurred after recording. In *Streeter Bros. v. Overfelt*, 202 F.Supp. 143, 144 (D.Mont.1962), the Court held:

> A lien is specific and perfected so as to be choate when nothing further need be done to make the lien enforceable.

The final choate act here was ascertaining the amount of the tax liability. Since this occurred after recording of the deed, the lien did not effectively attach until after severance of the reserved mineral interest. To hold otherwise is to fly in the face of logic, applicable law, and equity. See *Superior Oil Company v. Vanderhoof*, 307 F.Supp. 84 (D.Mont.1969).

■ We further believe that the curative statute for royalty interests reserved by a county, R.C.M. 1947, § 84–4196 (not recodified in Montana Code Annotated because a validation statute), is of little aid to plaintiffs.[10] The Court in *Superior Oil Company*

---

9. R.C.M. 1907, § 2602 (now MCA § 15–16–403 (1979)) provides:

*Tax upon real and tax upon personal a lien on both.*—Every tax due upon real property is a lien against the property assessed, ... which several liens attach as of the first Monday of March in each year.

10. R.C.M. 1947, § 84–4196 provides as follows:

*Confirmation of oil and gas leases heretofore made.* That all reservations of royalty interest in oil, gas, and minerals heretofore made or attempted to be made by counties in the sale of tax deed lands and all oil and gas leases heretofore made or attempted to be

**718**

*v. Vanderhoof, supra,* 307 F.Supp. 84 at 91–92, held that:

> It is reasonable to infer that the statute was intended to clarify the somewhat uncertain and ambiguous language in the prior statute rather than provide for a totally different interest.

The curative statute cannot create an estate greater than that which existed at the time of the tax deed conveyance. Therefore, the county cannot reserve what it never legally owned.[11]

We thus conclude that the actual severance date is controlling and accordingly the 1932 tax deed did not carry with it the mineral interest. For the reasons given in the discussion, the defendants are declared to be the fee simple absolute owners of the minerals. The plaintiffs, Richland County and third party defendants, have no interest in the minerals.

Pursuant to Fed.R.Civ.P. 56(a), defendants and third party plaintiffs, Kenneth W. Simons, Eva L. Spies and Shell Oil Company, are granted summary judgment. This motion is based upon the Agreed Statement of Facts between the parties and upon the files and pleadings in this proceeding.

An appropriate order will issue in accordance with this Memorandum Opinion.

---

made by counties covering tax deed lands, whether or not irregular or void for any reason, are hereby confirmed and declared to be legal and valid, notwithstanding the provisions of any law to the contrary.

**11.** As the Court in *Nevada Irrigation District v. Keystone Copper Corporation,* 224 Cal.App.2d 523, 36 Cal.Rptr. 775 (1964), so well stated:

> ... [W]e noted the distinction between tax deeds voidable because of some irregularity in the tax proceedings (not amounting to a deprivation of due process) and a tax deed void because the proceedings were a nullity due to the non-delinquency of the lands as-

sessed, stating that to attempt to breathe life into the latter deed via either curative acts or statutes of limitation was confiscation violating due process. Equally confiscatory would be an attempt to give vitality, as against the owner of a mineral estate, to a deed derived from tax proceedings aimed only at the separate and severable surface estate. We hold that the tax deed here, although its description was broad enough to include both surface and subsurface rights, was ineffective to include the latter which were not the subject of the district's assessment and, therefore, not delinquent.