**UNION PRODUCING COMPANY,**
Plaintiff,

v.

**Eunice Garrett SANBORN et al.,**
Defendants.

**Civ. A. No. 2764.**

United States District Court
E. D. Texas,
Tyler Division.

Feb. 10, 1961.

———◆———

Thomas Fletcher and James W. Mc-Cartney, of Vinson, Elkins, Weems & Searls, Houston, Tex., for plaintiff, Union Producing Co.

M. M. Guinn, Rusk, Tex., for defendants, Eunice Garrett Sanborn et vir, S. G. Sanborn.

James H. Rounsaville, of Norman, Rounsaville & Hassell, Jacksonville, Tex., for defendants, Aber Box and Basket Factory, a Partnership, and the Individual Members, namely, Glenn Haberle,

Dell Haberle, a Feme Sole, Francis L. Haberle and Fredda Love Mason, a Widow.

William Emerson Stone, Jr., Jacksonville, Tex., for defendant, City of Jacksonville, Tex.

William Robert Smith, San Antonio, Tex., for defendants, Claudia Love Pinkard, a Widow, Ninnie Love O'Neal, a Widow, Anna Love Smith, et vir, W. R. Smith, Gladys Love Berkey, et vir, Paul A. Berkey, Hubert H. Love, Jr. and Annie B. Love, a Widow.

F. Wilbert Lasater, of Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, Tex., for defendants, Richard Herndon, Heather Herndon McHenry, et vir, Patrick E. McHenry, Robert Herndon, William Herndon, Lola K. Herndon, Hugh Herndon, III, Louise Herndon Riegel, William S. (Billie) Herndon, William Sydney Herndon, Grace Herndon Patten, Individually and as Independent Executrix of the Estates of J. H. Herndon, Deceased, and Sallie Olivia Herndon, Deceased, Elizabeth Herndon Potter, and Neva Jane Herndon.

SHEEHY, Chief Judge.

This is an interpleader suit with jurisdiction of this Court being invoked under the provisions of 28 U.S.C.A. § 1335. The plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Delaware. Most of the defendants are residents and citizens of the State of Texas. However, those of the defendants who do not reside in the State of Texas reside in and are citizens of various states other than either the State of Texas or the State of Delaware. The defendants, Richard Herndon, Heather Herndon McHenry, et vir, Patrick E. McHenry, Robert Herndon, William Herndon, Lola K. Herndon, Hugh Herndon, III, Louise Herndon Riegel, William S. (Billie) Herndon, William Sydney Herndon, Grace Herndon Patten, individually and as independent executrix of the Estates of J. H. Herndon, deceased, and Sallie Olivia Herndon, deceased, Elizabeth Herndon Potter and Neva Jane Herndon will hereinafter be referred to as the Herndon Group defendants. The remainder of the defendants, namely, Eunice Garrett Sanborn, et vir, S. G. Sanborn, Aber Box and Basket Factory, a partnership, and the individual members thereof, namely, Glenn Haberle, Dell Haberle, a feme sole, Francis L. Haberle and Fredda Love Mason, a widow, the City of Jacksonville, Texas, a municipal corporation, Claudia Love Pinkard, a feme sole, Anna Love Smith, et vir, W. R. Smith, Gladys Love Berkey, et vir, Paul A. Berkey, Ninnie Love O'Neal, a feme sole, Hubert H. Love, Jr., and Annie B. Love, a feme sole, will hereinafter be referred to as the Sanborn Group defendants.

The facts found are as hereinafter stated.

Plaintiff is and has for some time been the owner of the oil, gas and mineral leasehold estate in and under a tract of land containing 146.21 acres out of the Don Thomas Quevado Survey, Cherokee County, Texas, being the same tract described in a deed from J. H. Herndon, executor of the estate of W. S. Herndon, deceased, to Wesley Love, dated January 12, 1904, and recorded in Volume 29, page 491 of the Deed Records of Cherokee County, Texas,[1] plaintiff having acquired an oil, gas and mineral lease covering said tract from each of the defendants. The oil and gas lease the plaintiff acquired from Claudia Love Pinkard, a widow, Ninnie Love O'Neal, a widow, Anna Love Smith, et vir, W. R. Smith, Gladys Love Berkey, et vir, Paul A. Berkey, Hubert Love, Jr., and Annie B. Love, a widow, contains a royalty provision calling for the payment of one-fourth of the market value at the wellhead of gas produced and sold from the leased premises. The leases plaintiff acquired from the remainder of the defendants contain royalty provisions calling for the pay-

---

1. In said deed from J. H. Herndon, executor of the estate of W. S. Herndon, deceased, to Wesley Love dated January 12, 1904, the tract of land therein described was described as containing 139.-9 acres, more or less. A recent survey shows that the tract described in said deed actually contains 146.21 acres.

ment of one-eighth of the market value at the wellhead of gas produced, saved and sold from the leased premises.

Pursuant to authorization contained in the leases that plaintiff acquired from the defendants, the plaintiff, by instrument dated August 7, 1957, formed the "Union Producing Company's Graham Unit" for the purposes of drilling for and producing gas, condensate (sometime called distillate) and other liquid hydrocarbons, except oil. Said Unit as formed contains 629.71 acres and includes all of the 146.21 acre tract above mentioned. After creating such Unit, the plaintiff drilled and completed a well on said Unit which is producing gas and condensate in commercial quantities. Although said well is not located on the 146.21 acre tract, same is located within the limits of the Unit so that royalties attributable to the true owners of the oil, gas and other minerals under the said 146.21 acre tract become due upon production of gas and condensate from said well.

The Herndon Group defendants claim title to the entire mineral estate, including oil and gas, in and under the 146.21 acre tract in question subject to the oil and gas leases covering said tract executed by them and now held by plaintiff. On the other hand, the Sanborn Group defendants claim title to the entire mineral estate, including oil and gas, in and under the 146.21 acre tract subject to the oil and gas leases covering said tract executed by them and now held by plaintiff. The Aber Box and Basket Factory claims title to the mineral estate in and under a 27.01 acre tract out of the 146.21 acre tract subject to the oil and gas lease executed by it and held by plaintiff covering said 27.01 acre tract.[2] The City of Jacksonville, Texas, claims title to the mineral estate in and under a 26.79 acre tract out of the said 146.21 acre tract subject to an oil and gas lease covering said 26.79 acre tract executed by it and held by plaintiff.[3] Eunice Garrett Sanborn and husband, S. G. Sanborn, claim title to the mineral estate in and under a 65.83 acre tract out of the said 146.21 acre tract subject to an oil and gas lease covering said 65.83 acre tract executed by them and owned by plaintiff.[4] Claudia Love Pinkard, Anna Love Smith and husband, W. R. Smith, Gladys Love Berkey and husband, Paul A. Berkey, Ninnie Love O'Neal, Hubert H. Love, Jr. and Annie B. Love claim title to the mineral estate in and under a 26.50 acre tract out of said 146.21 acre tract subject to an oil and gas lease covering said 26.50 acre tract executed by them and held by plaintiff.[5] Because of the conflicting claims to the mineral estate made by the Herndon Group defendants on the one hand and the Sanborn Group defendants on the other hand, the

2. The 27.01 acre tract claimed by the Aber Box and Basket Factory is the same tract of land described in the deed from Everett Love, et al. to Aber Box and Basket Factory dated April 29, 1937, and recorded in Vol. 206, page 102 of the Deed Records of Cherokee County, Texas, less a 1.65 acre tract described in a deed from Aber Box and Basket Factory to the City of Jacksonville, Texas, dated April 22, 1938, and recorded in Vol. 213, page 100 of the Deed Records of Cherokee County, Texas.

3. The 26.79 acre tract claimed by the City of Jacksonville, Texas, is the aggregate of the 1.65 acre tract described in the deed from Aber Box and Basket Factory to the City of Jacksonville, Texas, referred to in Footnote 2 above, and the tract of land described in the deed from Everett Love et al. to the City of Jacksonville, Texas, dated March 13, 1934, and recorded in Vol. 195, page 466 of the Deed Records of Cherokee County, Texas.

4. The 65.83 acre tract claimed by Eunice Sanborn and husband, S. G. Sanborn, is the tract of land described in the deed from Everett Love, Executor, to J. W. Garrett, dated June 26, 1935, and recorded in Vol. 196, page 420 of the Deed Records of Cherokee County, Texas.

5. The 26.50 acre tract, title to the minerals under which is claimed by the defendants, Claudia Love Pinkard, et al., is the same tract of land described in the deed from Claudia Pinkard, Attorney in Fact, to the State of Texas dated May 3, 1929, and recorded in Vol. 137, page 323 of the Deed Records of Cherokee County, Texas.

plaintiff has not paid to the defendants, or any of them, or to anyone else, the royalties attributable to the owners of the oil, gas and other minerals in and under the 146.21 acre tract by virtue of the production by plaintiff of gas and condensate from the well it drilled and is producing on its "Graham Unit."

At the time this suit was instituted on February 18, 1960, the plaintiff was obligated to pay to the true owners of the oil, gas and other minerals under the 146.21 acre tract as royalty because of the gas and distillate produced from its well on the "Graham Unit" a sum greatly in excess of $500. Upon the filing of this suit, plaintiff deposited into the registry of this Court the sum of $7,047.15 representing an amount sufficient to pay the full amount of the royalty due the true owners of the mineral estate in and under the 146.21 acre tract through December 31, 1959, including the one-fourth royalty provided for in the lease executed by Claudia Love Pinkard, et al., above referred to. The plaintiff has continued to deposit into the registry of this Court from month to month the royalties that have accrued to the true owners of the mineral estate under said 146.21 acre tract from and after December 31, 1959, by virtue of the production from the well on the "Graham Unit." Plaintiff has requested that the Court determine the true owners of the mineral estate in and under said 146.21 acre tract in order that it might make payment of the royalties due the owners of said mineral estate to the parties legally entitled thereto.

On November 22, 1901, W. S. Herndon, the then owner of the above mentioned 146.21 acre tract, executed a Bond for Title to Joe A. Sanders binding and obligating the said W. S. Herndon, his heirs, executors and administrators to convey said tract to the said Joe A. Sanders upon the payment of certain consideration. This Bond for Title, which was filed for record in the Deed Records of Cherokee County, Texas, on February 15, 1904, and is recorded in Volume 29, page 491 of said Deed Records provides in part as follows:

"It is distinctly understood that all iron ore and minerals are reserved from this sale and retained by the seller together with the perpetual right and privilege for him his heirs and assigns to enter in upon said premises and dig, quarry and remove said Iron ore and minerals without cost let or hindrence on the part of the Vendee his heirs and assigns forever, for which the said Joe A. Seanders has paid to me the sum of one hundred thirty five dollars and has this day executed and delivered to me 4 certain promissory notes payable to W. S. Herndon at Tyler, Texas, or order with interest from date until paid at the rate of 10 per cent per annum as follows and annually:—

Note No. 1 due November 1st, 1902 for $175.00
Note No. 2 " " " 1903 " $175.00
Note No. 3 " " " 1904 " $175.00
Note No. 4 " " " 1905 " $175.00

"Now if the said Vendee shall punctually pay said notes at maturity according to the legal tenor, and effect thereof then the said Vendor his heirs or legal representatives shall make to said Vendee his heirs or assigns a Warranty Deed to said land and premises above described. If, however the said Vendee should fail to pay said notes or either of them at maturity as herein before stipulated then this obligation shall become null and void."

W. S. Herndon died testate on or about October 11, 1903. His will was duly admitted to probate in the County Court of Smith County, Texas, on January 5, 1904. By the terms of said will J. H. Herndon,

son of W. S. Herndon, was appointed independent executor and was given the power to sell any and all portions of the estate of W. S. Herndon at public or private sale and in any manner that might seem just to him for the purpose of paying the debts of W. S. Herndon. The said J. H. Herndon duly qualified as independent executor of the estate of W. S. Herndon prior to January 12, 1904.

On November 9, 1903, Joe A. Sanders assigned the Bond for Title, above referred to, to one Wesley Love. The assignment recited a consideration of $447.25 cash in hand paid to Joe A. Sanders by the said Wesley Love, and an agreement on the part of the said Wesley Love to assume and pay for Joe A. Sanders to the executor of the estate of W. S. Herndon, deceased, the four promissory notes for $175 each executed by Joe A. Sanders to W. S. Herndon on November 22, 1901, which were described in the Bond for Title from Herndon to Sanders, together with all interest due on said notes, and to relieve the said Sanders from all further liability as to said indebtedness.

At the time of his death W. S. Herndon owed debts aggregating a substantial amount. These debts were still owing by the estate of W. S. Herndon at the time J. H. Herndon, as executor of the estate of W. S. Herndon, executed the deed in favor of Wesley Love referred to in the next succeeding paragraph.

On January 12, 1904, J. H. Herndon, as executor of the estate of W. S. Herndon, executed and delivered to Wesley Love a deed without warranty purporting to convey to the said Wesley Love the 146.21 acre tract in question. This deed contained no reservation of the minerals, or any portion thereof, in and under the tract of land. Said deed was filed for record in the Deed Records of Cherokee County, Texas, on February 15, 1904, and provides in part as follows:

"Whereas on the 22nd day of November 1901, the said W. S. Herndon executed a certain Bond for title to Joe A. Sanders of Cherokee County, Texas, for one hundred twenty five (125) acres of land more or less, said land more fully described below and bound himself and his legal representatives in the sum of Eight Hundred and twenty five ($825.00) Dollars to make to the said Joe A. Sanders, a good and valid deed upon the payment of said sum of money and,

"Whereas the said Joe A. Sanders on the 9th day of November 1903 conveyed his said Bond for title and interest in said land to Wesley Love, of Cherokee County, Texas, and the said Love assumed the payment of four (4) notes for seven Hundred ($700.00) Dollars,

"Now therefore, I J. H. Herndon, executor, by virtue of the power and authority aforesaid and in consideration of the said Bond for Title and the payment to me of the purchase money, in full, as agreed in said Bond for Title by the said Wesley Love, the receipt whereof is hereby acknowledged have granted, bargained, sold and conveyed and by these presents do grant, bargain and sell and convey to the said Wesley Love a certain tract of land the property of the said W. S. Herndon deceased situated in the County of Cherokee State of Texas, it being 133⁹⁄₁₀ acres as actually surveyed on the ground, instead of 125 acres as called for in said Bond for title surveyed off of the South end of Block No. 11 of a subdivision of Abstract No. 44 of a three league Grant to Don Thomas Quevado in Cherokee County, Texas, and situated about 4½ miles North from the town of Jacksonville and described by meets and bounds as follows, to-wit:"

The Herndon Group defendants, claiming as either heirs or devisees of W. S. Herndon and/or J. H. Herndon, claim and assert that there was a valid effective mineral reservation that effectively vested in the estate of W. S. Herndon title to all minerals; including oil and gas, in and under the 146.21 acre tract in question. The Sanborn Group defendants claiming title to all the minerals, includ-

ing oil and gas, in and under the 146.21 acre tract under Wesley Love as either heirs, devisees or grantees of Wesley Love, his heirs or grantees, assert that the deed from J. H. Herndon, executor, to Wesley Love, above referred to, effectively passed to Love title to all minerals, including oil and gas, in and under said tract.

In support of their claim and assertion that there was a valid reservation of the minerals, including oil and gas, the Herndon Group defendants contend that the deed from J. H. Herndon, executor of the estate of W. S. Herndon, deceased, to Wesley Love, having referred back to the Bond for Title which contained the mineral reservation, incorporated in said deed said mineral reservation. It is the further contention of the Herndon Group defendants that if they be mistaken in their contention stated in the preceding sentence, then, in the alternative, J. H. Herndon, as executor of the estate of W. S. Herndon, deceased, had no authority to convey the mineral estate in and under the tract of land in question to Wesley Love without additional consideration and further, in the alternative, that through a mutual mistake of J. H. Herndon, as executor of the estate of W. S. Herndon, and Wesley Love the deed failed to expressly contain the mineral reservation set out in the Bond for Title.

This is not a suit in which the deed from J. H. Herndon, as executor, to Wesley Love is sought to be reformed because the mineral estate in and under the tract of land conveyed by the deed was not reserved because of a mutual mistake of J. H. Herndon and Wesley Love. Any such suit by the Herndon Group defendants was long ago barred by the Texas four year statute of limitation.[6] Thus the contention of the Herndon Group defendants last above mentioned is wholly without merit and deserves no further discussion or consideration.

The contention of the Herndon Group defendants to the effect that the deed from J. H. Herndon, as executor, to Wesley Love, having referred to the Bond for Title which contained the mineral reservation, incorporated said mineral reservation in said deed is equally without merit. A bond for title, such as the one in question, is no more than a contract to convey.[7] It is well settled in Texas that all agreements, whether oral or written, entered into by and between the parties to a deed prior to its execution are presumed to have been merged in the deed in the absence of pleading and proof that references thereto were omitted from the deed through mistake, accident, or fraud, and after delivery and acceptance of a deed in performance of a contract for the purchase and sale of land the deed is regarded as the final expression of the agreement of the parties and the sole repository of the terms on which they have agreed.[8] Since the deed from J. H. Herndon, as executor, to Wesley Love contained no reservation of the minerals, there was no reservation unto the W. S. Herndon estate of the minerals, including oil and gas, in and under the said 146.21 acre tract even though the Bond for Title from W. S. Herndon to Joe A. Sanders provided for the reservation of all iron ore and minerals from the sale of said tract.

As above pointed out, the estate of W. S. Herndon, deceased, owed debts at the time J. H. Herndon, as executor, executed the deed to Wesley Love. That being true, under the settled law of Texas J. H. Herndon, as executor, had the right to sell property belonging to the estate of W. S. Herndon, including mineral estates, and the purchaser of any such property

6. Art. 5529, Vernon's Annotated Revised Civil Statutes of Texas; Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173; Kennedy v. Brown, Tex.Civ. App., 113 S.W.2d 1018 (Writ of Error Dismissed).

7. Faddell v. Taylor, Tex.Com.App., 239 S.W. 931, 932.

8. Baker v. Baker, Tex.Civ.App., 207 S.W. 2d 244, 249, 250 (Writ of Error Refused N.R.E.); Whitehead v. Weldon, Tex. Civ.App., 264 S.W. 958, 960; and 19 Tex.Jur.2d, Sec. 190, page 514.

so sold is not required to show that the consideration received from such a sale was applied to a debt or debts of the estate.[9] Apparently, the Herndon Group recognize this to be the law; however, they contend that since the Bond for Title reserved the iron ore and other minerals from the sale of the tract covered by the Bond for Title and the deed from J. H. Herndon, as executor, to Wesley Love did not reserve the minerals in and under the tract conveyed no consideration for the mineral estate in and under said tract passed from Wesley Love to the estate of W. S. Herndon and the conveyance of the entire tract, including all minerals, to Wesley Love constituted a gift by J. H. Herndon, as executor, to Love of the minerals in and under said tract. Was there an adequate consideration passing from Wesley Love to the W. S. Herndon estate to support a conveyance by J. H. Herndon, executor, to Wesley Love of the 146.-21 acre tract in question, including the mineral estate in and under same? I find and conclude that there was. Upon the timely payment by Joe A. Sanders, or his assignee, of the four notes in the amount of $175 each described in the Bond for Title in question J. H. Herndon, as executor of the estate of W. S. Herndon, deceased, was obligated under said Bond for Title to convey the 146.21 acre tract, with all iron ore and minerals in and under said tract reserved, to Joe A. Sanders, or his assignee, and this obligation existed without regard to the provisions of the will of W. S. Herndon and without regard to whether the estate of W. S. Herndon owed debts. On January 12, 1904, the date the said J. H. Herndon. as executor, executed and delivered the deed to Wesley Love, the last two notes described in the Bond for Title were not then due and owing. One of said notes was not to become due until November 1, 1904, and the other was not to become due until November 1, 1905. The deed recites as a part of the consideration therefor the payment to J. H. Herndon as executor of the purchase money in full as agreed in the Bond for Title, thus stating, in effect, that Wesley Love paid to J. H. Herndon, as executor, on or before January 12, 1904, not only the first two notes described in the Bond for Title, but also the last two notes described in said Bond for Title which were not then due. Such payment of the last two notes before their respective maturity dates was of itself sufficient consideration to support the conveyance of the mineral estate in and under the 146.21 acre tract.[10]

In light of the findings and conclusions hereinabove made and reached, I find and conclude that the deed from J. H. Herndon, executor of the estate of W. S. Herndon, to Wesley Love, above referred to, effectively passed to the said Wesley Love title to all the minerals, including oil and gas, in and under the 146.21 acre tract in question.

Judgment will be entered:

(1) Declaring that the Herndon Group defendants own no interest in the minerals, including oil and gas, in and under the 146.21 acre tract in question and are not entitled to any of the royalties attributable to said 146.21 acre tract and the minerals in and under same by virtue of the production of gas and condensate from the well on plaintiff's "Graham Unit" above referred to;

(2) Declaring that the Sanborn Group defendants are the owners of the entire mineral estate, including oil and gas, in and under said 146.21 acre tract to the extent claimed by them, respectively, as hereinabove pointed out, subject to the oil and gas leases executed by them, respectively, and now held by plaintiff, and that said defendants are entitled to the royalties attributable to the owners of the oil, gas and other minerals in and under said 146.21 acre tract because of production of gas and condensate from the well on plaintiff's "Graham Unit" and provid-

9. 18 Tex.Jur.2d, Sec. 702, page 549, et seq. and Sec. 705, page 555.

10. Kirchoff v. Voss, 67 Tex. 320, 3 S.W. 548; Johnson v. Portwood, 89 Tex. 235, 34 S.W. 787; and 13 Tex.Jur.2d, Sec. 59, page 198.

ing that upon said judgment becoming final the Clerk of this Court shall pay to the Sanborn Group defendants from the sums heretofore deposited in the registry of this Court by plaintiff and such sums, if any, as may be deposited in the registry of this Court by plaintiff in the future the amounts due them, respectively, as royalty under the oil and gas leases they, respectively, executed and delivered to plaintiff because of the production of gas and condensate from the well on plaintiff's said "Graham Unit;" and

(3) Adjudging all costs incurred herein against the Herndon Group defendants, jointly and severally.